1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   ROSI GODINEZ, an                )   CV 15-01652 RSWL (SSx)
     individual,                     )
13                                   )   **ORDER Re: PLAINTIFF'S**
                     Plaintiff,      )   **MOTION FOR ATTORNEYS'**
14                                   )   **FEES AND COSTS** [107].
          v.                         )
15                                   )
     ALTA-DENA CERTIFIED DAIRY,      )
16   LLC, a limited liability        )
     company; MARIA FLORES, an       )
17   individual and DOES 1 to        )
     20, inclusive,                  )
18                                   )
                                     )
19   _____ )
                     Defendants.     )

20                    **I.    INTRODUCTION**

21        Currently before the Court is Plaintiff Rosi

22   Godinez's ("Plaintiff") Motion for Attorneys' Fees and

23   Costs [107] ("Motion").  Plaintiff's Motion arises out

24   of her action against Defendant Alta-Dena Certified

25   Dairy, LLC ("Defendant") for disability discrimination,

26   retaliation, wrongful termination, disability

27   harassment, and failure to prevent disability

28   harassment in violation of the California Fair

                               1

1  Employment and Housing Act ("FEHA"), in addition to a
2  violation of the California Family Rights Act ("CFRA"),
3  ECF No. 1.  On March 30, 2016, upon conclusion of a
4  five day jury trial, Judgment was entered in favor of
5  Plaintiff and against Defendant.  <u>See</u> J., ECF No. 106.
6  Plaintiff was awarded a total recovery of $544,505.00,
7  as well as attorneys' fees and costs.  <u>Id.</u>  Plaintiff
8  now seeks an order awarding her attorneys' fees in the
9  amount of $891,420.00 and expert witness fees in the
10 amount of $19,456.75.

**II.   BACKGROUND**

**A.  <u>Factual Background</u>**

13      Plaintiff was employed by Alta-Dena for
14 approximately 35 years, from 1978 until October 13,
15 2013.  Compl. ¶ 7.  Plaintiff began her employment at
16 Alta-Dena as a quality assurance laboratory technician
17 at the ice cream plant in City of Industry North.  <u>Id.</u>;
18 Declaration of Sayaka Karitani, Ex. A (hereinafter
19 "Godinez Depo.") 14:11-15:21.  When Alta-Dena closed
20 its ice cream plant at the end of 2011, Plaintiff began
21 work in the milk processing plant ("Milk Plant").  <u>Id.</u>
22 at 15:22-24.  In 2012, the Milk Plant became a party to
23 the Collective Bargaining Agreement ("CBA") with the
24 unit of Teamsters Local 630 (the "Union").  <u>Id.</u> at
25 58:19-59:6; Flores Decl. §§ 4, 6.  In or about 2013,
26 and during her employment with Alta-Dena, Plaintiff
27 suffered from disabilities for which she requested
28 accommodation from Alta-Dena, including, but not

2

1  limited to, accommodations to her working environment,
2  her schedule, job duties, and leave, including leave
3  under the California Family Rights Act ("CFRA").  <u>Id.</u>
4  at ¶ 9.  Alta-Dena, via its managers, employees, and
5  agents, including Defendant Flores, knew of Plaintiff's
6  disabilities and her desire for accommodation from
7  early 2013 until her employment was terminated on
8  October 31, 2013.  <u>Id.</u> at ¶ 10.

9      Plaintiff brought this action against Defendant for
10  disability discrimination, retaliation, wrongful
11  termination, disability harassment, and failure to
12  prevent disability harassment in violation of FEHA, in
13  addition to a violation of the CFRA.  Upon conclusion
14  of a five day jury trial, Judgment was entered in favor
15  of Plaintiff, whom was awarded a recovery of
16  $544,505.00, as well as attorneys' fees and costs.  <u>See</u>
17  J., ECF No. 106.  Plaintiff now seeks an order awarding
18  her attorneys' fees in the amount of $445,710.00, with
19  a multiplier of 2.0, for a total fee award of
20  $891,420.00.  Plaintiff further seeks $19,456.75 in
21  expert fees.

22  **B.  <u>Procedural Background</u>**

23      On March 17, 2014, Plaintiff filed a Complaint in
24  the Superior Court of California, County of Los
25  Angeles.  On March 6, 2015, Alta-Dena removed the
26  action to this Court [1].  On October 27, 2015, Alta-
27  Dena filed its Motion for Summary Judgment, or, in the
28  Alternative, for Partial Summary Judgment [19].  On

January 29, 2016, this Court granted in part and denied in part Defendant's Motion for Summary Judgment [54]. A jury-trial commenced on March 8, 2016, and concluded on March 14, 2016.   Judgment was entered in favor of Plaintiff, who was awarded a recovery of $544,505.00, and attorneys' fees and costs [106].   Plaintiff now files the present Motion [107], seeking attorneys' fees and costs.

### III.   DISCUSSION

### A.   Legal Standard

Under the "American Rule," each party to a lawsuit is generally responsible for its own attorneys' fees. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).   The Fair Employment and Housing Act ("FEHA") permits courts to award attorneys' fees and costs, including expert witness fees, to the "prevailing party."   Cal. Gov. Code § 12965(b).   The party seeking fees bears the burden of proving his entitlement to fees, the reasonableness of the fees sought, and a fee enhancement if sought.   See Ketchum v. Moses, 24 Cal. 4th 1122, 1138 (2001).

The calculation of attorneys' fees in a removed diversity action, such as the present case, is governed by California law.   Crommie v. State of Cal., Public Utilities Comm'n, 840 F. Supp. 719, 724 (N.D. Cal. 1994) (citing Bouman v. Block, 940 F.2d 1211, 1237 (9th Cir. 1991)).   Under California law, the general rule is that the amount of an attorneys' fee award is within

4

the sound discretion of the trial court.  <u>Hancock Lab.,</u>
<u>Inc. v. Admiral Ins.</u>, 777 F.2d 520, 526 (9th Cir.
1985).  Under California law, "the primary method for
establishing the amount of 'reasonable' attorney fees
is the lodestar method.  The lodestar (or touchstone)
is produced by multiplying the number of hours
reasonably expended by counsel by a reasonable hourly
rate.  The goal of the lodestar method is to "fully
compensate counsel for the prevailing party services
reasonably provided."  <u>Horsford v. Board of Trustees of</u>
<u>California State University</u>, 132 Cal.App.4th 359, 395
(2005).

Once the court has fixed the lodestar, it may
increase or decrease that amount by applying a positive
or negative 'multiplier' to take into account a variety
of other factors, including the quality of the
representation, the novelty and complexity of the
issues, the results obtained, and the contingent risk
presented.  <u>Ketchum v. Moses</u>, 24 Cal.4th 1122 (2001).

**B.  <u>Analysis</u>**

In the present Motion, Plaintiff seeks attorneys'
fees in the amount of $445,710, with a 2.0 lodestar
enhancement, for a total fee award of $891,420.  <u>See</u>
<u>generally</u> Mot. 1:11-12, ECF No. 107.  Plaintiff also
seeks $19,456.75 in expert witness fees.  <u>Id.</u>
Additionally, Plaintiff states in her Motion that she
reserves the right to seek additional fees, that may be
incurred addressing any post-trial motions.  Upon

review of Plaintiff's Motion and all relevant papers, this Court **GRANTS in part** Plaintiff's Motion for Attorneys' Fees and Costs [107].

1.   The Hours Spent by Plaintiff's Counsel are Sufficiently Documented and Reasonable

The first issue the Court must consider is whether the number of hours spent by Plaintiff's counsel are reasonable.  To decide this, the "basis for the trial court's calculation must be the actual hours counsel has devoted to the case, less those that result from inefficient or duplicative use of time."  Horsford, 132 Cal.App.4th at 399-400.  Counsel's time records are "the starting point for [the court's] lodestar determination."  Id.  In fact, "the verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous."  Id.

Plaintiff claims that Potter, whom exclusively handled the case from filing the original Complaint in March 2014 until trial, expended a total of 440.20 hours to date on Plaintiff's lawsuit.[1]  Plaintiff further alleges counsel from Alder Law, associated counsel whom litigated the case, expended the following

---

[1]Potter clarifies that he personally spent about 435.20 hours on Plaintiff's lawsuit.  An attorney and former colleague Gary Och spent 5 hours on the lawsuit.  Och's 5 hours were spent preparing for, traveling to, and engaging in a motion to remand the case when Potter was unable to attend due to unforeseen circumstances.   Potter Decl. ¶¶ 12, 13, ECF No. 107-8.

hours in litigating this matter: Mike Alder, 96.4
hours; Marni Folinsky, 185.4 hours; Allison Stone, 2.6
hours.  Mot. 2:3-12.

Upon review of the proffered time records, the
Court finds the hours sought for reimbursement by
Plaintiff are sufficiently detailed.  See Decl. of
Michael Alder ("Alder Decl.") Ex. A, ECF No. 107-7;
Decl. of Donald Potter ("Potter Decl.") Ex. A, ECF No.
107-9.  In the time records, Potter and Alder break
down the hours spent by each attorney on this case,
detailing the date, task, and hourly rate of the
attorney whom completed those hours.  Id.  The records
detail the proportion of time spent on written
discovery, law and motion, percipient and expert
depositions, settlement negotiations, trial
preparation, and trial.  Id.

The Court further finds that the records show that
all hours were reasonably spent in pursuit of
Plaintiff's case, as viewed at the time the work was
performed.  See Moore v. Jas. H Matthews & Co., 682
F,2d 830, 839 (9th Cir. 1982) (finding compensation is
appropriate for "every item of service which, at the
time rendered, would have been undertaken by a
reasonable and prudent lawyer to advance or protect his
client's interest.").  There is no indication that
Donald Potter or counsel from Alder Law expended
duplicative, inefficient, or excessive hours in any
area.   Significantly, Defendant does not proffer any

evidence of such.  Further, there is no indication that any hours detailed in any of the attorneys' time records are erroneous, so as to overcome the "presumption of validity" these time records are due. <u>Horsford</u>, 132 Cal.App.4th at 396.

Defendant notes that Potter seeks to be compensated for ninety hours of work on this matter since January 21, 2016, which is when Alder and Folinsky began to handle the case.  Opp'n 5:13-27.  Defendant argues that "[s]uch entries were unnecessary and should not be awarded to [Plaintiff]," <u>id.</u>, however, Defendant does not provide the Court with any argument, case law, or reasoning in support of this position.

Upon review of Potter's time records during this period, the Court finds that these hours were reasonably spent in furtherance of Plaintiff's lawsuit,[2] and thus Plaintiff should be compensated for this time. Discounting the time Potter spent on the case during trial would be improper as Potter was actively involved in the litigation, and associated AlderLaw into the case solely as trial counsel.  Plaintiff has proffered argument and evidence to show Potter's "participation in the month before trial and at trial was critical to

---

[2]Potter details his time spent completing tasks, such as: discussing settlement offers with defense counsel, communicating with Folinsky regarding the trial, communicating with defense counsel regarding the motions *in limine*, preparing charts for use as display for trial, reviewing Defendant's proposed jury instructions, etc.  Potter Decl., Ex A.

the success of the trial," for example, "his presence
was of key importance to observe the trial testimony of
the witnesses whose depositions he solely handled and
to strategize throughout the trial."  Reply 6:1-21.

Defendant then argues that Plaintiff should not be
awarded costs for getting Alder and Folinsky "up to
speed" about the case in the month-and-a-half before
trial.  Opp'n 6:1-8.  Defendant argues that those fees
"would have been unnecessary had Potter handled the
case through trial," and thus those fees are not
reasonable and should not be compensated. Id. at 6:1-8.

Again, Defendant provides no support for its
argument.  Nonetheless, the Court finds this argument
wholly unconvincing, as Alder and Folinsky couldn't
have possibly litigated the case without getting "up to
speed" on the matter.  Defendant concedes that Alder
spent 13.8 hours and Folinsky spent 33.2 hours
preparing for trial.  Opp'n 6:14-17.  The Court finds
these hours not only reasonable, but a demonstration of
efficiency in reviewing the matter's two year history
and numerous disputed issues.  Alder and Folinsky must
be compensated for this time reasonably spent in
pursuit of Plaintiff's case.

Finally, Defendant argues that Plaintiff should not
be awarded fees for two "needless" motions that were
filed - (1) a motion to remand the case to state court,
and (2) a motion to compel the production of employee
work schedules.  Defendant contends that "those tasks

were not reasonable and, as a result, [Plaintiff] should receive no compensation for them." Opp'n 7:3-7. Upon review of the parties' papers, the Court finds these motions were reasonably filed and, in fact, resulted from the parties' failure to cooperate during the meet-and-confer process. In so finding, the Court notes: "'Attorneys generally must pursue all available legal avenues and theories in pursuit of their clients' objectives; it is impossible, as a practical matter, for an attorney to know in advance whether or not his or her work on a potentially meritorious legal theory will ultimately prevail.'" Greene v. Dillingham Construction, N.A., Inc., 101 Cal.App.4th 418, 424 (2002) (citing Sokolow v. County of San Mateo, 213 Cal.App.3d 231, 250 (1989)). Accordingly, Plaintiff should be compensated for time spent on these motions.

In sum, the Court finds Plaintiff has met her burden in proving the reasonableness of all hours sought for reimbursement. The Court further finds Defendant has failed to show the claimed hours are unreasonable.

2. The Hourly Rates Sought by Plaintiff's Counsel are Reasonable

Plaintiff's attorneys are seeking compensation for fees at the following hourly rates: $950/hour (Michael Alder); $600/hour (Marni Folinsky); and $550/hour (Donald Potter). Alder Decl. ¶ 17.

Defendant argues that these rates are

10

"unjustifiably high."  Opp'n 3:3.  Defendant claims that Plaintiff's attorneys offer no evidence of an hourly rate that they actually charge to paying clients, rather than contingency clients.  Id. at 4:1-10.  Defendant then suggests that this Court should cap Plaintiff's counsel's rates at $300 per hour, because, as Defendant argues, that is "the proper rate to be charged by contingency attorneys for single plaintiff employment discrimination cases."  Id. at 3:15-24.

The Court finds Plaintiff's counsel's rates are reasonable.  As noted above, the lodestar method considers the "basic fee for comparable legal services in the community."  Horsford, 132 Cal.App.4th at 397 (citing Ketchum, 14 Cal.4th at 1132).  Defendant is incorrect in asserting that Plaintiff proffers no evidence of counsel's rates for paying clients. Plaintiff's attorneys attest to their current billing rates in Potter and Alder's supporting declarations. See Potter Decl. ¶ 16 ("My current billing rate is five hundred and fifty dollars per hour ($550.00)"); Alder Decl. ¶ 17 ("My regular hourly rate is $950 per hour, Ms. Folinsky's hourly rate is $600 per hour and Ms. Stone's hourly rate is $300 per hour.").[3]  Nowhere in

---

[3]Alder notes in his Declaration: "AlderLaw is divided into teams consisting of a Senior Attorney, Associate, Paralegal, and Legal Assistant.  The team assigned to [Plaintiff's] case practices in the area of employment law. . . [and] consisted of Marni Folinsky, Senior Attoney, and Allison Stone, Associate." Alder Decl. ¶ 13.

11

these declarations do Potter or Alder indicate these
rates are only applied to contingency cases.  Further,
there is no indication these rates are falsified or
exaggerated, and as discussed above, counsel's records,
"as officers of the court, are entitled to credence in
the absence of a clear indication [they] are
erroneous."  <u>Holsford</u>, 132 Cal.App.4th at 396.

Plaintiff bolsters her argument that the rates
sought are reasonable with five supporting
declarations.  <u>See</u> Decl. of Carney R. Shegerian
("Sherigan Decl."), ECF No. 107-5; Decl. of Arash
Homampour ("Homampour Decl."), ECF No. 107-4; Decl. of
Lee Feldman ("Feldman Decl."), ECF No. 107-3; Decl. of
Joseph R. Becerra ("Becerra Decl."), ECF No. 107-2;
Decl. of Frank Alfonso ("Alfonso Decl."), ECF No. 10-2.
In these declarations, five similarly experienced labor
and employment attorneys from the Los Angeles area
attest that: "[b]ased on [their] knowledge and
experience of billing rates for work of similar
complexity in the community, and [their] knowledge of
the skill, experience, reputations and expertise of
Plaintiff's counsel in this case, it is [their]
professional opinion that the hourly rates sought in
this case are well within the range of reasonableness
for attorneys of similar skill, expertise, experience
and reputation performing work of similar complexity."
Shegerian Decl. ¶ 9; <u>see also</u> Becerra Decl. ¶ 8;
Alfonso Decl. ¶ 9; Feldman Decl. ¶ 7; Homampour Decl. ¶

16.  Furthermore, these supporting declarations exemplify that Plaintiff's counsel's fees are reasonable, as the attesting labor and employment attorneys, with similarly extensive experience, charge the following rates themselves: Arash Homampour: $975/hour, Frank Alfonso: $600/hour, Joseph R. Becerra: $550/hour, Carney R. Shegerian: $700/hour.  Finally, the Court finds Defendant's argument that courts in this district generally limit attorneys' fee rates in single-plaintiff employment cases to $300 per hour is unsupported and without merit.  The Court finds the rates sought by Plaintiff are reasonable and accurately reflect their stature in the field of labor and employment contingency litigation.

    3.  <u>The Court Will Apply a Lodestar Multiplier</u>

    Plaintiff requests that the Court apply a 2.0 lodestar multiplier, awarding Plaintiff a sum total of $891,420 in attorneys' fees.  Plaintiff argues such a multiplier is warranted because of (1) the risk presented by taking on the matter on contingency, (2) Plaintiff's counsel's preclusion from other work, and (3) the exceptional results obtained at trial.  Mot. 12:6-17:7.

    "In FEHA cases, the trial court has the discretion to apply a multiplier or fee enhancement to the lodestar figure." <u>Greene</u>, 101 Cal.App.4th at 426-427 (citing <u>Flannery v. California Highway Patrol</u>, 61 Cal.App.4th 629, 646 (1998); <u>Serrano v. Priest</u>, 20

Cal.3d 25, 48–49 (1977)).[4]  "The purpose of such
adjustment is to fix a fee at the fair market value for
the particular action.  In effect, the court
determines, retrospectively, whether the litigation
involved a contingent risk or required extraordinary
legal skill justifying augmentation of the unadorned
lodestar in order to approximate the fair market rate
for such services."  In re Vitamin Cases, 110 Cal. App.
4th 1041, 1052 (2003) (internal citations omitted).
Public policy supports an adjustment in contingent fee
matters, and specifically in FEHA matters, because: "'A
lawyer who both bears the risk of not being paid and
provides legal services is not receiving the fair
market value of his work if he is paid only for the
second of these functions.  If he is paid no more,
competent counsel will be reluctant to accept fee award
cases.'"  Id. (quoting Ketchum 24 Cal.4th at p.
1132–1133).  "The contingency adjustment may be made at
the lodestar phase of the court's calculation or by
applying a multiplier to the noncontingency lodestar
calculation (but not both)."  Id.

"In determining the exact quantum of the
multiplier, California courts evaluate several factors,

---

[4]California courts have consistently noted that attorneys'
fees awarded to "prevailing parties" in FEHA cases are intended
to provide "fair compensation to the attorneys involved in the
litigation at hand and encourage [ ] litigation of claims that in
the public interest merit litigation." Flannery v. Prentice, 26
Cal.4th 572, 583 (2001) (citing Weeks v. Baker & McKenzie, 63
Cal.App.4th 1128, 1172 (1998)).

including: '(1) the novelty and difficulty of the
questions involved, (2) the skill displayed in
presenting them, (3) the extent to which the nature of
the litigation precluded other employment by the
attorneys, [and] (4) the contingent nature of the fee
award.'"  <u>National Federation of the Blind v. Target
Corp.</u>, 2009 WL 2390261, at *6 (N.D. Cal. Aug. 3, 2009)
(citing <u>Ketchum</u>, 24 Cal.4th at 1132).  "The total fee
amount is then compared against lodestar multipliers in
comparable cases."  <u>Id.</u>

Here, Plaintiff's counsel argue they are entitled
to an increased lodestar because "the contingent-risk
factor was enormous."  Mot. 14:19-21.  "Plaintiff's
counsel spent more than 700 hours in attorney time over
the course of several years and advanced nearly $50,000
in costs" on the matter.[5]  <u>Id.</u>  To date, Plaintiff's
counsel maintain they have not received any payment for
the hours expended, nor any reimbursement for the
fronted litigation expenses.  Potter Decl. ¶ 11.
Further, Plaintiff contends "[t]his was an extremely
risky case.  Given the complexity of Defendant's
business and Plaintiff's job, Plaintiff had an uphill
battle getting the jury to understand the essential
functions of Plaintiff's job as lab tech in a milk
processing plant."  <u>Id.</u>

---

[5]Alder notes he advanced approximately $28,000 in costs.
Alder Decl. ¶ 11.  Potter Notes he advanced "approximately
$20,000.00 of [his] own money for litigation costs to prosecute
this lawsuit."  Potter Decl. ¶ 12.

The Court finds that Plaintiff's counsel are not
limited to recovering their hourly rate on the time
spent on the case, but rather are entitled to an
increased lodestar amount, reflecting the value of the
contingency factor, as well as the difficulty of the
issues at hand, the skill exemplified by counsel, and
the exceptional results obtained.  See Cazares v.
Saenz, 208 Cal.App.3d 279, 289 (1989).

The Court notes, specifically in the case of
Potter, that the length of this case itself presented
an economic difficulty to the solo practitioner.  An
award of fees based solely on the lodestar, without a
significant lodestar multiplier, would fail to
compensate Potter for the great risk he took in
pursuing Plaintiff's claim.  See In re Vitamin Cases,
110 Cal. App. 4th at 1054.  The Court further notes
that Alder Law took great risk in working hundreds of
hours and advancing tens of thousands of dollars in
costs, in spite of the very real risk that counsel
would never be entirely compensated, or compensated at
all.  See Horsford, 132 Cal.App.4th at 394.
Additionally, the present matter involved numerous
complicated issues, increasing the risk presented by
its contingent nature.[6]

---

[6]In order to properly present Plaintiff's case to the jury,
Plaintiff's counsel had to break-down many nuanced tasks and job
requirements to argue that Plaintiff was capable of working
despite her physical disabilities.  Whether Plaintiff could
complete these tasks was a central issue in this case – and thus

16

Next, the Court finds Plaintiff has sufficiently shown the Court that the demands of the present matter precluded counsel from accepting other work – specifically, Potter was precluded from other work during the years of pre-trial litigation[7], and counsel from Alder Law were precluded from other work during trial and post-trial motion practice.[8]

Further, the Court finds Plaintiff's counsel demonstrated great skill in litigating the case, and

---

Plaintiff's job requirements required close and intense analysis including, *inter alia*, scheduling and staffing of co-workers, physical requirements of each task, the time and frequency of each task (as completed by Plaintiff and her coworkers), the tools and equipment available to employees, and the layout of the facility. Further, Plaintiff's counsel delved into Plaintiff's disability history, and treatment of her disability, as well as analysis of Plaintiff and Defendant's Collective Bargaining Agreement. Potter Decl. ¶¶ 18-21.

[7]In his declaration, Potter notes that he "operate[s] a small office with finite resources, " and that "[p]rior to February 2016, [he] did not employ any attorney." Potter Decl. ¶ 10. Potter notes that he has "prosecuted her case . . . since [he] filed the lawsuit in the Los Angeles Superior Court in March 2014." Id. at ¶ 11. Potter maintains that his firm has incurred 440.20 hours to date on Plaintiff's case, and he personally has spent 435.30 hours on the litigation. Id. at ¶ 12. Potter explains that "[a]s a true sole practitioner, my firm has a finite amount of time [and] resources to expend on cases we prosecute. The substantial time and cost I invested in [Plaintiff's] lawsuit necessarily precluded my office from accepting other employment and I had to decline a number of potential cases that I could have otherwise pursued." Id. at ¶ 43.

[8]In his declaration, Alder states "[w]ithout disclosing privileged and proprietary information, I can represent to the Court that by taking on this representation and agreeing to try [Plaintiff's] case, it meant that I had to decline other matters so that I could dedicate[] my time to this matter." Alder Decl. ¶ 12.

17

ultimately obtained exceptional results at trial. In the present case, the jury awarded Plaintiff more than five times the amount of Defendant's Offer of Judgment prior to trial.[9] Plaintiff proceeded to trial in spite of this Offer because, as Plaintiff states, "[t]his was nowhere close to the amount of Plaintiff's claimed damages . . .," and Defendant "never made a reasonable settlement offer." Mot. 10:8-12. Defendant contends that it disposed of three of Plaintiff's claims at the summary judgment stage, and thus Plaintiff did not obtain exceptional results worthy of the fees requested. On the contrary, this Court notes that it is not significant that three of Plaintiff's claims were disposed of at the summary judgment stage. It is not unusual in employment discrimination cases for counsel to plead alternative theories at the outset.[10] Rather, it is significant that the jury found in favor of Plaintiff on all five surviving claims, and awarded Plaintiff more than five times Defendant's Offer of Judgment, over half a million dollars. Accordingly, the Court awards Plaintiff's counsel an upward lodestar

---

[9]Plaintiff notes that just prior to trial, "[o]n February 11, 2016, [Defendant] made an Offer of Judgment pursuant to Rule 68 for $100,001 exclusive of attorneys' fees costs." Mot. 4:2-3.

[10]"Employment discrimination cases, by their very nature, involve several causes of action arising from the same set of facts. A responsible attorney handling an employment discrimination case must plead a variety of statutory, tort, and contract causes of action in order to fully protect the interests of his or her client." Brown v. Superior Court, 37 Cal.3d 477, 486 (1984).

adjustment on the additional bases of exceptional skill and success at trial.  See Feminist Women's Health Ctr. v. Blythe, 32 Cal.App.4th 1641, 1674, fn8 (1995) ("In some cases of exceptional success an enhanced award may be justified.").

The Court finds that while an upward adjusted lodestar is appropriate, a 2.0 multiplier is not. California courts have only upheld such high multipliers on limited occasions.  Two factors that have frequently weighed in favor of awarding such high multipliers include when a plaintiff obtains (1) exceptional results *in the absence of supporting precedent*, and (2) when pursuit of an action has in some way expanded a public right.  See National Federation of the Blind v. Target Corp., 2009 WL 2390261, at *6 (N.D. Cal. Aug. 3, 2009) ("Exceptional results in the face of vigorous opposition and in the absence of supporting precedent militate in favor of higher multiplier values."); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1049 (9th Cir. 2002) ("exceptional results" warranting a high fee multiplier exist when "counsel pursued th[e] case in the absence of supporting precedents.").  The Ninth Circuit has consistently held that a 2.0 multiplier is appropriate when an action not only enforces a private right, but in doing so "provide[s] a significant public benefit" by, for example, expanding statutory protections by extending the applicability of discrimination laws.

National Federation of the Blind, 2009 WL 2390261, at *6 (2009); but see Flannery v. California Highway Patrol, 61 Cal.App.4th 629 (1998) (finding that a successful action, even when it sent a message that sexual discrimination and harassment would not be tolerated, failed to register as a significant public benefit, and thus a larger lodestar multiplier was not warranted.).

Where an action does not achieve such success in the absence of precedent, however warrants some upward adjustment of the lodestar due to factors such as contingent risk, great skill, or exceptional results at trial, courts have applied a more modest multiplier. "It has been observed that 'contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typically contingency cases ranging between twenty and thirty-five percent of the lodestar.'" Schefke v. Reliabile Collection Agency, Ltd., 96 Hawai'i 408, 455 (Haw. 2001) (citing Rendine v. Pantzer, 141 N.J. 292, 343 (N.J. 1995)).

Accordingly, and in consideration of all the factors discussed above, the Court finds that an enhancement of the lodestar by 25% of the original fee amount of $445,720 is appropriate. The Court does not hesitate to award these fees simply because it would amount to a fees award higher than the jury's damages award to Plaintiff. In fact, the Court notes that

discrimination claims "undoubtedly require substantial effort from counsel." <u>Simmons v. PCR Technology</u>, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002).  In fact, California courts often award attorneys' fees in excess of the jury award, when appropriate: "The court notes that in its twenty-plus years' experience, attorneys' fees in individual discrimination cases often exceed the damages." <u>Simmons</u>, 209 F.Supp.2d at 1035; <u>see also</u> <u>Vo v. Las Virgenes Municipal Water Dist.</u>, 79 Cal.App.4th 440, 445 (2002) (affirming a fee award of more than ten times the compensatory damages award based on trial court finding that defendant failed to offer any amount in settlement while knowing of the defendants' discriminatory conduct, forcing the matter to be intensely litigated at trial).  In consideration of all of the above, the Court awards Plaintiff's counsel a 25% upward lodestar adjustment, for a total fee award of $557,150.

    4.   <u>Plaintiff Should be Awarded the Expert Fees Sought in their Entirety</u>

    Plaintiff additionally seeks expert witness fees in the amount of $19,456.75.  Mot. 16-17.  Alder attests in his declaration that $8,393.75 was paid to Formuzis Pickersgill & Hunt to prepare an economic analysis of Plaintiff's loss of earnings.  Alder Decl. ¶ 11; <u>see</u> Reply Exs. A, B ECF Nos. 111-1, 111-2.  Plaintiff notes that "[a]n economist was needed in this case to calculate [Plaintiff's] past loss of earnings and

benefits and the present value of her future loss of earnings." Alder Decl. ¶ 11. Plaintiff additionally paid $11,063 to Dr. Anthony Reading who testified about the emotional distress Plaintiff suffered as a result of Defendant's conduct. Id.; see Reply Ex. B, ECF No. 111-3.

As discussed above, FEHA specifically permits the Court to award costs to the "prevailing party," including expert fees. See Cal. Gov. Code § 12965(b). Upon review of the invoices from Plaintiff's experts, the Court should find the fees sought are reasonable and sufficiently detailed. Accordingly, pursuant to FEHA, the Court **GRANTS** Plaintiff's request for $19,456.75 in expert fees.

### IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Attorneys' Fees and Costs [107], however applies a 25% upward lodestar adjustment, for a total of $557,150.00 in attorneys' fees. Further, the Court awards Plaintiff its requested expert fees, a total of $19,456.75.

**IT IS SO ORDERED.**

DATED: August 15, 2016          s/ RONALD S.W. LEW

                              **HONORABLE RONALD S.W. LEW**

                              Senior U.S. District Judge

22